# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

TIMOTHY S. VERNOR,

        Plaintiff,

v.

AUTODESK, INC.,

        Defendant.

No. 2:07-cv-01189-JLR

**FIRST AMENDED COMPLAINT**

## NATURE OF THE ACTION

1. Plaintiff Timothy S. Vernor earns his living selling used items on eBay, an Internet auction site. Defendant Autodesk, Inc., acting through its counsel, wrongly represented to eBay that Vernor's sale of an authentic, used copy of Autodesk's software infringed Autodesk's copyright. Autodesk's misrepresentation caused eBay to suspend Vernor's eBay account, causing him to lose his primary source of income for a month. Vernor seeks declaratory and

FIRST AMENDED COMPLAINT      1

injunctive relief to prevent Autodesk from engaging in further unjustified interference with his business, and damages for lost sales.

## I. PARTIES

2. Plaintiff Timothy S. Vernor is an individual domiciled in Seattle, Washington.

3. Defendant Autodesk, Inc. is a Delaware corporation with its primary place of business in San Rafael, California.

## SUBJECT MATTER JURISDICTION

4. This Court has subject-matter jurisdiction over Vernor's federal claims under 28 U.S.C. §§ 1331 and 1338. The federal claims arise under the Declaratory Judgment Act (28 U.S.C. § 2201), the Copyright Act (17 U.S.C. § 501), and the Digital Millennium Copyright Act (17 U.S.C. § 512). This Court has supplemental subject-matter jurisdiction over Vernor's state-law claims under 28 U.S.C. § 1367(a). The Court also has subject-matter jurisdiction over Vernor's state-law claims under 28 U.S.C. § 1332(a)(1), because Vernor and Autodesk are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

**FACTS**

The eBay Auction Site

Law Offices of Michael Withey
601 Union Street, Ste. 4200
Seattle, WA 98101
206-405-1800
Fax: 866-793-7216

5. eBay is a virtual Internet marketplace where members can sell goods and services in an auction-style or fixed-price format. It is by far the largest site of its kind on the Internet, with more than one hundred million registered users. Each product for sale on eBay has its own web page, called a "listing" or "auction," which describes the product and allows potential purchasers to bid on or purchase the product.

6. As an Internet Service Provider ("ISP"), eBay is ordinarily immune under the Communications Decency Act ("CDA") from secondary liability for the acts of its users. 47 U.S.C. § 230. This statutory immunity under the CDA contains an exception for intellectual property offenses (such as copyright infringement). *Id.* § 230(e)(1). Nevertheless, the Digital Millennium Copyright Act ("DMCA") provides ISPs safe harbor from liability for "infringement of copyright by reason of the storage at the direction of a user of [copyrighted] material that resides on a system or network controlled or operated by [the ISP]." 17 U.S.C. § 512(c)(1). To qualify for protection from copyright liability under this provision, an ISP must act "expeditiously" to remove material that is claimed to be infringing after receiving a notice of claimed infringement from the copyright owner. *Id.* § 512(c)(1)(C). The ISP must also implement "a policy that provides for the termination in

FIRST AMENDED COMPLAINT                          3

Law Offices of Michael Withey
601 Union Street, Ste. 4200
Seattle, WA 98101
206-405-1800
Fax: 866-793-7216

appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." *Id.* § 512(i)(1)(A).

7. To protect itself from secondary liability for claims of copyright infringement, eBay automatically terminates a listing whenever a copyright owner submits a DMCA notice of claimed infringement regarding that listing. eBay does not independently review the validity of the notice of claimed infringement and trusts the copyright owner's honesty that a particular auction infringes its copyright. eBay also notes the termination on the record of that eBay seller, and, to implement the requirement of 17 U.S.C. § 512(i)(1)(A) that it have a policy to terminate the accounts of repeat infringers, suspends the accounts of users whose auctions have been terminated multiple times. The precise number of auctions that must have been terminated before the seller's account is suspended, and the length of the suspension, varies depending on the circumstances of the case. If an eBay seller is reinstated after a period of suspension, and another one of that seller's auctions is terminated, the seller's account is permanently suspended, and eBay will not reinstate the account absent the request of the copyright owner or a court order declaring that the seller has not infringed the copyright owner's rights.

8. The DMCA provides a mechanism for a subscriber to an ISP who is targeted by a notice of claimed infringement to contest the notice with the ISP.

FIRST AMENDED COMPLAINT                4                Law Offices of Michael Withey
                                                        601 Union Street, Ste. 4200
                                                        Seattle, WA 98101
                                                        206-405-1800
                                                        Fax: 866-793-7216

Under 17 U.S.C. § 512(g), a subscriber to an ISP can submit a "counter notice" to the ISP stating "under penalty of perjury that the subscriber has a good faith belief that the material was removed . . . as a result of mistake or misidentification of the material." *Id.* § 512(g)(3). An ISP continues to enjoy safe harbor from liability if, after receiving a counter notice from a subscriber, it notifies the person who filed the notice of claimed infringement that it will reinstate the removed material in ten to fourteen business days unless it first receives notice of a pending legal action to restrain the subscriber from continuing to post the material. *Id.* § 512(g)(2). However, nothing prevents a copyright owner from continuing to terminate eBay auctions by submitting notices of claimed infringement against future auctions until the targeted user's account is terminated, even if the targeted auctions are identical to another auction that has already been reinstated pursuant to a counter notice.

9. Autodesk, acting through counsel, has submitted multiple DMCA notices of claimed infringement against various auction listings and, based on that experience, fully understood eBay's procedures regarding the DMCA and the consequences of submitting a notice of claimed infringement.

FIRST AMENDED COMPLAINT — 5

Law Offices of Michael Withey
601 Union Street, Ste. 4200
Seattle, WA 98101
206-405-1800
Fax: 866-793-7216

Autodesk's Restrictive Licensing Terms

10. Autodesk previously sold software titled "AutoCAD Release 14." The AutoCAD software was sold sealed in a shrink-wrapped box. Inside the box is a document that purports to be a "Software License Agreement." There is no indication of the existence or terms of the license agreement on the outside of the software box.

11. The license agreement states:

BY OPENING THE SEALED SOFTWARE PACKET(S), YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS LICENSE AGREEMENT. THESE ARE THE ONLY TERMS UPON WHICH AUTODESK SOFTWARE PRODUCTS ARE LICENSED. IF YOU DO NOT AGREE TO THESE TERMS, YOU MAY, WITHIN FIFTEEN (15) DAYS, RETURN THIS ENTIRE PACKAGE, INCLUDING THE UNOPENED SOFTWARE PACKET(S), TO THE LOCATION WHERE YOU ACQUIRED IT FOR A FULL REFUND.

12. The agreement further provides that the licensee may not "modify, translate, reverse-engineer, decompile, or disassemble the Software," "rent, lease, or transfer all or part of the Software, Documentation, or any rights granted hereunder to any other person without Autodesk's prior written consent," or "use or transfer the Software outside of the country" in which the software was purchased.

13. Autodesk interprets its license agreement to prohibit all resale of authentic copies of its products. By prohibiting resale of its software, Autodesk does not have to compete with lower-cost used copies of its software and is thus able to keep the price of its software artificially high.

14. The agreement is ambiguous. However, to the extent that it could be construed as a prohibition against resale of an authentic copy of Autodesk's software, the agreement is unconscionable. It also conflicts with and is unlawful under the Copyright Act, which provides that, notwithstanding the copyright owner's exclusive right of distribution, "the owner of a particular copy . . . lawfully made under this title, or any person authorized by such owner, is entitled, *without the authority of the copyright owner*, to sell or otherwise dispose of the possession of that copy." 17 U.S.C. § 109 (emphasis added).

15. Vernor has never agreed to AutoCAD's licensing terms. Nor has he ever opened a sealed AutoCAD software packet or installed a copy of the AutoCAD software.

## Autodesk's Interference With Vernor's eBay Sales

16. Vernor is an eBay seller who, for the past seven years, has made his living selling used items on eBay—including comic books, video games, software, and collectibles—under the name Happy Hour Comics. During that time, he has

built up a reputation as a reliable seller, completing more than 10,000 transactions and accumulating a positive feedback rating of 99.4 percent.

17. Defendant Autodesk, Inc. is a software company that makes computer-aided design software for architects and engineers. In May 2005, Vernor purchased an authentic, used copy of Autodesk's AutoCAD Release 14 software at a garage sale and posted it for sale on eBay. Vernor's eBay listing did not contain any content (such as writing or pictures) to which Autodesk owned a copyright.

18. Autodesk, acting through its attorney, Andrew S. MacKay, filed a notice of claimed infringement with eBay under the DMCA.

19. After receiving the notice of claimed infringement, eBay sent Vernor an email notifying him that, as a result of Autodesk's notice, his auction had been terminated. eBay notified bidders on the auction that the auction had been terminated and that their bids were canceled.

20. Vernor contacted MacKay by telephone to determine why his auction had been terminated. Vernor informed MacKay that the software was an authentic, used copy and that he had never agreed to Autodesk's licensing terms. MacKay responded that Autodesk did not allow any resale of its software products on eBay or otherwise, and that such resale constituted copyright infringement.

Law Offices of Michael Withey
601 Union Street, Ste. 4200
Seattle, WA 98101
206-405-1800
Fax: 866-793-7216

21. On May 25, 2005, MacKay sent a letter to Vernor asserting that AutoCAD software is "licensed, not sold" and that AutoCAD licenses are "'nontransferable,' meaning that they cannot be sold or transferred by any other means." MacKay again asserted that violation of Autodesk's licensing agreements constituted copyright infringement.

22. Vernor filed a counter notice with eBay under the DMCA, contesting the termination of his auction. Pursuant to 17 U.S.C. § 512(g), eBay then told Autodesk that it had fourteen days to notify eBay that it had initiated a legal action against Vernor or the auction would be reinstated. When Autodesk did not respond within the required period, eBay reinstated the auction and Vernor sold the software to another eBay user.

23. On April 27, 2007, Vernor purchased four authentic, used copies of Autodesk's AutoCAD Release 14 software at an office sale by the architectural firm Cardwell/Thomas & Associates.

24. Soon after the office sale, Vernor listed the first of the four copies of AutoCAD for sale on eBay. Autodesk, acting through MacKay, again filed a notice of claimed infringement against the listing. Vernor again submitted a counter notice to eBay and, when Autodesk did not respond, the listing was eventually reinstated. This pattern was repeated for the next two copies of the

FIRST AMENDED COMPLAINT  9

software. As to each, Autodesk filed a notice of claimed infringement and Vernor filed a counter notice.

25. When Vernor listed his final copy of the AutoCAD software, Autodesk filed another notice of claimed infringement and eBay in response suspended Vernor's eBay account for repeat infringement on June 5, 2007. Once again, Vernor filed a counter notice contesting the claimed infringement.

26. While the last counter notice was pending, Vernor sent a letter to Autodesk and MacKay on June 11, 2007. Vernor again informed Autodesk that he was selling an authentic copy of the AutoCAD software and was entitled to resell it under 17 U.S.C. § 109. Vernor also informed Autodesk that he had never installed the AutoCAD software or agreed to any license agreement. Vernor demanded that Autodesk contact eBay to withdraw its notices of claimed infringement. Vernor sent a second letter on June 15, 2007, reiterating his demand.

27. On June 29, 2007, MacKay sent a letter to Vernor in response. MacKay wrote: "Please refrain from any further attempts at the unauthorized sale of Autodesk software. If you do not, then I will have no choice but to advise my client to take further action regarding this matter."

28. When Autodesk did not respond to Vernor's final counter notice, eBay reinstated Vernor's eBay account on July 5, 2007. Vernor was unable to earn

FIRST AMENDED COMPLAINT                    10

any income on eBay while his account was suspended between June 5, 2007, and July 5, 2007.

29. Vernor currently possesses two authentic, used copies of Autodesk software that he wishes to resell on eBay. Moreover, Vernor occasionally finds other authentic copies at garage sales and intends to purchase future copies for purposes of resale.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT ACT, 22 U.S.C. § 2201

30. Autodesk contends that Vernor's resale of authentic, used copies of Autodesk's software infringes Autodesk's copyright. Vernor contends that his resale of the software is lawful and does not infringe Autodesk's copyright.

31. Autodesk has repeatedly terminated Vernor's eBay auctions for allegedly infringing Autodesk's copyright and has threatened to take further action if Vernor continues to sell authentic copies of the software.

32. Autodesk's notices of claimed infringement regarding Vernor's lawful resale of authentic software caused eBay to suspend his account and thereby caused him to lose one month of income. The notices of claimed infringement have also impaired Vernor's eBay record such that another notice could lead to a permanent termination of his eBay account.

FIRST AMENDED COMPLAINT    11    Law Offices of Michael Withey
601 Union Street, Ste. 4200
Seattle, WA 98101
206-405-1800
Fax: 866-793-7216

33. Vernor wishes to sell future copies of Autodesk software but cannot do so without risking another notice of claimed infringement, which could cause permanent termination of his eBay account and loss of his primary source of income.

34. There is thus a real and actual controversy between Vernor and Autodesk regarding whether Vernor's resale of authentic, used copies of AutoCAD software infringes Autodesk's copyright.

## SECOND CLAIM FOR RELIEF
## UNFAIR AND DECEPTIVE PRACTICES

35. Autodesk's license agreement prohibiting transfers of its software is unconscionable and unlawfully restricts rights guaranteed by the Copyright Act. The provision allows Autodesk to unfairly limit competition by sellers of used products in the secondary market, thereby harming consumers by artificially inflating the price of Autodesk's products.

36. Autodesk's copyright in its software does not give it the right to prohibit resale of its lawfully acquired products. Autodesk's enforcement of its license agreement by submitting DMCA notices of claimed infringement, and by continuing to submit notices of claimed infringement despite counter notices submitted by Vernor, was an abuse of Autodesk's copyright and of the DMCA.

37. Autodesk's use of and enforcement of its license terms are unfair methods of competition, unfair or deceptive practices, and unlawful restraints of trade under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86, and/or the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

## DEMAND FOR RELIEF

Vernor demands judgment as follows:

1. Actual damages and punitive damages;

2. Treble damages under the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.090;

3. Attorneys' fees and expenses under the Copyright Act, 17 U.S.C. § 505, the California Code of Civil Procedure, Cal. Civ. P. Code § 1021.5, and the Washington Consumer Protection Act, Wash. Rev. Code. § 19.86.090;

4. A declaratory judgment that

    a. Vernor's resale of authentic, used copies of AutoCAD software is lawful, protected by 17 U.S.C. § 109, and does not infringe Autodesk's copyright or other rights;

    b. Autodesk's "Software License Agreement" is unenforceable or unenforceable as to Vernor; and

      c. Autodesk has no right to interfere with Vernor's sale of authentic, used copies of Autodesk software;

5. An injunction

      a. prohibiting Autodesk from further interfering with Vernor's resale of Autodesk software, and

      b. requiring Autodesk to rescind their DMCA notices of claimed infringement with eBay; and

6. Such other relief as the Court finds appropriate.

Dated this 14th day of November 2007.

**MICHAEL WITHEY**
WSBA Bar No. 4787
Law Offices of Michael Withey
601 Union Street
Two Union Square, Suite 4200
Seattle, WA 98101
Phone: (206) 405-1800
Fax: (866) 793-7216
Email: mike@witheylaw.com
Attorney for plaintiff

**GREGORY A. BECK**
DC Bar No. 494479, pro hac vice to be filed
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Phone: (202) 588-1000
Fax: (202) 588-7795
Email: gbeck@citizen.org
Attorney for plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

NONE

I hereby certify that I have caused this document to be served via U.S. Postal Service, facsimile or messenger to the following:

Autodesk, Inc.
111 McInnis Parkway
San Rafael, CA  94903

Andrew Mackay
Donahue Gallagher Woods
300 Lakeside Drive Suite 1900
Oakland, CA  94612

DATED this 14th day of November, 2007.


/s/ Michael E. Withey
MICHAEL E. WITHEY, WSBA #4787
Law Offices of Michael E. Withey
Two Union Square
601 Union Street, Suite 4200
Seattle, Washington  98101
Phone:  206-405-1800
Fax:  866-793-7216
Email:  mike@witheylaw.com