Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY S. VERNOR, an individual,<br>Plaintiff,<br>v.<br>AUTODESK, INC., a Delaware corporation,<br>Defendant. | No. 2:07-cv-01189-RAJ<br><br>AUTODESK, INC.'S MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT<br><br>Note on Motion Calendar: **February 8, 2008**<br><br>ORAL ARGUMENT REQUESTED |

Defendant Autodesk, Inc. hereby moves for an order dismissing all claims of Plaintiff Timothy S. Vernor ("Vernor"), or, in the alternative, for summary judgment. This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. This motion is based on the argument and authority herein, the declarations of Evelyn LaHaie and Lawrence K. Rockwell filed concurrently herewith, and the pleadings and papers on file in this action.

## INTRODUCTION

Vernor has filed a declaratory relief action against Autodesk, Inc. ("Autodesk") seeking a judgment that Vernor may lawfully sell any used copy of Autodesk's copyrighted product AutoCAD® software without regard to Autodesk's Software License Agreement.



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

However, as established herein, whether one accepts the facts alleged, or the actual facts as supplemented by the declarations filed concurrently herewith, Vernor's First Amended Complaint ("FAC") both fails to state a claim upon which relief may be granted and, as a matter of law, cannot be amended to state a claim. Thus, dismissal of the action without leave to amend, or in the alternative, entry of judgment, is required.

Vernor claims that he acquired certain copies of Autodesk's software from a third party, Cardwell/Thomas & Associates (the "Licensee"), with whom Autodesk had originally contracted to provide a license to use the software. Vernor claims that notwithstanding the contract between Autodesk and the Licensee characterizing the Licensee's interest in the software as a license, he is somehow a purchaser of the software, not a subsequent licensee, and as such he is purportedly not bound by any of the terms to which his supplier, the Licensee, and Autodesk agreed. Even though Vernor alleges he "owns" the software outright, he noticeably fails to allege anywhere in the FAC that his supplier, the Licensee, had any ownership rights to sell. Thus, as pled, the FAC fails to state the required claim for ownership.

The fact is, the Licensee (i.e., Vernor's supplier) had a license to use the software – not unrestricted ownership. Vernor admits he acquired copies of Autodesk's software from the Licensee. Vernor's FAC omits the fact that Autodesk and its Licensee had a signed Settlement Agreement ("Settlement Agreement") explicitly characterizing the transaction in which Autodesk granted rights in the software to the Licensee as a license, and detailing license rights granted to the Licensee to use the subject software pursuant to those license terms (the "Autodesk License Agreement"). The Settlement Agreement permitted the Licensee alone to use the software, and restricted the Licensee from transferring that right to others without Autodesk's consent.

Vernor further admits that at all relevant times he was aware of the Autodesk License Agreement and its terms prohibiting the transfer of Autodesk software from the



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

Licensee without the consent of Autodesk. In fact, the FAC quotes the license terms at length. However, Vernor alleges that the Copyright Act's First Sale Doctrine somehow entitles him to ignore those license terms, the Licensee's lack of ownership, and the contract between Autodesk and its Licensee in which the Licensee explicitly consented to the limitation of its rights in Autodesk's software.

The FAC ignores well-established principles of law. Vernor asks the Court to declare that the Licensee, holding only a license, somehow transferred to Vernor something more, to wit, unrestricted ownership and use in the software at issue. Vernor then alleges that the software he "purchased" is "owned" free of license terms and he has unrestricted rights to sell the same pursuant to the Copyright Act's First Sale Doctrine.

Courts have overwhelmingly rejected claims like Vernor's and have held that the doctrine relied upon by Vernor does not apply in situations where software is, as here, licensed rather than sold. Moreover, courts have repeatedly rejected claims such as Vernor's that license agreements prohibiting the transfer of software are invalid or conflict with the Copyright Act. Instead, the law holds that as long as a contract limiting subsequent transfers of software was formed, the licensee is bound by it. The law further holds that where two commercial parties – in this instance Autodesk and its Licensee – freely characterize a transaction respecting usage rights in a software product as a license, courts will not interfere with that characterization. Here, the evidence leaves no question that a valid license agreement explicitly prohibiting transfer was knowingly and voluntarily entered into between Autodesk and its Licensee, the party from whom Vernor acquired the subject software.

Likewise, Vernor's claim that even if the Autodesk License Agreement was valid as to the Licensee it does not apply to him ignores the law holding that a downstream purchaser cannot invoke the First Sale Doctrine unless he can trace his acquisition of the software to a bona fide "first sale" under the Copyright Act. Vernor does not allege a "first



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

sale" and the actual facts make clear he cannot do so. Without exception, courts have repeatedly held that a downstream purchaser (i.e., Vernor) cannot acquire more rights in a particular copy of a software product than those owned by its supplier (i.e., the Licensee). Finally, Vernor's attempt to state a claim of unfair and deceptive practices necessarily fails because it is well established law that software developers have a right to limit the dissemination of copies of their copyrighted software products through the use of license agreements and that license restrictions prohibiting transfer do not conflict with the Copyright Act.

As both the allegations set forth in the First Amended Complaint and the actual evidence establish that Vernor has failed to state a claim for relief, and demonstrate that he cannot state a claim, the First Amended Complaint should be dismissed in its entirety without leave to amend, or in the alternative, judgment should be entered for Autodesk.

## STATEMENT OF FACTS

### I. VERNOR'S FACTUAL ALLEGATIONS.

Vernor's First Amended Complaint alleges that Vernor has offered for sale "authentic, used" copies of Autodesk software on eBay. FAC ¶1. The FAC alleges that in May 2005, Vernor "purchased" a copy of Autodesk's AutoCAD®, Release 14 software and listed it for sale on eBay. FAC ¶17. Vernor alleges that he subsequently sold this software on eBay. FAC ¶22. Thus, no damage or claim is alleged to have arisen from this event.

The FAC also pleads that on April 27, 2007 Vernor purchased "four authentic, used copies of Autodesk's AutoCAD®, Release 14 software at an office sale by" the Licensee. FAC ¶23. Vernor claims that he then listed one of the four copies of the AutoCAD®, Release 14 software he acquired from the Licensee for sale on eBay, and that Autodesk served a notice of claimed infringement that resulted in eBay halting the auction, whereupon Vernor submitted a counternotice and eBay reinstated that auction. FAC ¶24. Vernor alleges that the same process was repeated when he listed two additional copies of



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

the AutoCAD®, Release 14 software he acquired from the Licensee. FAC ¶24. Vernor alleges that when he listed the fourth of the four copies of AutoCAD®, Release 14 software acquired from the Licensee, Autodesk sent another notice of claimed infringement to eBay and eBay suspended his eBay account. FAC ¶25. The FAC alleges that Vernor's eBay account was reinstated within one month with no further action by Autodesk. FAC ¶28. Vernor admits that Autodesk distributed its AutoCAD®, Release 14 software in sealed boxes and that enclosed in each box was a document entitled "Software License Agreement." FAC ¶10. In Paragraph 11 of the FAC, Vernor further alleges that the Autodesk License Agreement states as follows:

> By opening the sealed software packet(s), you agree to be bound by the terms and conditions of this License Agreement. These are the only terms upon which Autodesk software products are licensed. If you do not agree to these terms, you may, within fifteen (15) days, return this entire package, including the unopened software packet(s), to the location where you acquired it for a full refund.

Vernor admits that the Autodesk License Agreement imposes restrictions on the licensee respecting Autodesk's software, including provisions stating that the licensee may not "modify, translate, reverse-engineer, decompile, or disassemble the Software," "rent, lease, or transfer all or part of the Software, Documentation, or any rights granted hereunder to any other person without Autodesk's prior written consent," or "use or transfer the Software outside of the country" in which the software was purchased. FAC ¶¶11-12. The FAC also recognizes that the Autodesk License Agreement provides that a party opening the "sealed software packet(s)," i.e., the sealed jewel case containing the software installation CD-ROM distributed in the box alongside the Autodesk License Agreement, agrees to be bound by the terms of the Autodesk License Agreement. FAC ¶11.

Notwithstanding the above allegations, Vernor claims that the Autodesk License Agreement, by prohibiting the transfer of Autodesk software product, is "unconscionable" and unlawful and unfairly restricts rights guaranteed by the Copyright Act and the First Sale



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

Doctrine. FAC ¶¶14, 35. Vernor alleges he has "never installed the AutoCAD[®] software or agreed to any license agreement." FAC ¶26. However, Vernor does not allege that Autodesk's Licensee held anything more than a license to use the copies of the software it supplied to Vernor. FAC ¶15. Vernor ignores the Licensee's agreement with Autodesk in which the Licensee consented to characterize the Autodesk License Agreement as a license and consented to be bound by the license terms, including the provision therein prohibiting transfer of the software without Autodesk's consent.

Vernor states that he is currently in possession of two copies of Autodesk's software that he would like to sell, and that in the future he would like to sell copies of Autodesk's software that he may acquire. FAC ¶29.

## II. LICENSE AGREEMENT REFERENCED IN THE FIRST AMENDED COMPLAINT.

Vernor admits that the boxes of AutoCAD® software at issue here contained the Autodesk License Agreement, and he cites terms from the Autodesk License Agreement. FAC ¶¶10-12. Vernor's supplier, the Licensee, specifically agreed to the Autodesk License Agreement that Vernor cites as Autodesk distributed each copy of its AutoCAD®, Release 14 software at issue in this case pursuant to the Settlement Agreement.[1] Declaration of Evelyn LaHaie ("LaHaie Decl."), ¶ 9, attaching as Ex. A thereto a true and correct copy of the Settlement Agreement. The Settlement Agreement provides, in part, that Autodesk licensed each package of the AutoCAD®, Release 14 software to the Licensee pursuant to the specific licensing terms included in the Settlement Agreement and set forth as Exhibit A

---

[1] The serial numbers provided by Vernor for the two copies of Autodesk AutoCAD®, Release 14 software currently in his possession (110-98482363 and 110-98482364) were delivered in unopened packages pursuant to the Settlement Agreement and later registered by the Licensee on April 2, 1999. LaHaie Decl. ¶ 4; Declaration of Lawrence K. Rockwell, ¶ 2, Ex. A. The Licensee subsequently upgraded the software and received a significant discount on new software based on its promise that it would destroy the software in its possession (suggested retail price of $495 for an upgrade versus $3,750 for a new license). LaHaie Decl. ¶ 4. By the terms of the Licensee's upgrade agreement with Autodesk, the Licensee warranted that it would destroy prior versions of the software. Id. at ¶ 15. Thus, upon upgrading the two licenses for AutoCAD®, Release 14 software, the Licensee's rights in the software were terminated.



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

thereto. LaHaie Decl., ¶ 8. Those terms include the terms recited by Vernor in the FAC. Consistent with the Settlement Agreement, each licensed copy of AutoCAD®, Release 14 software that Autodesk provided to the Licensee was delivered on a CD-ROM enclosed in a box. Included within each box was a sealed jewel case enclosing the software CD-ROM. Id. at ¶15. Affixed to the opening of each jewel case was a warning sticker stating, in part:

> This software is licensed subject to the license agreement that appears during the installation process or is included in the package. If after reading the agreement you do not wish to accept its terms, you may return the software.

Id. at ¶11.

Also included within each box containing each AutoCAD®, Release 14 software CD-ROM was a printout of the Autodesk License Agreement. Id. at ¶14. The FAC[2] quotes from the Autodesk License Agreement language that is identical to language in the agreement included as Exhibit A to the Settlement Agreement, stating, in part, that the licensee cannot "rent, lease, or transfer all or part of the Software, Documentation, or any rights granted hereunder to any other person without Autodesk's prior written consent". FAC ¶12; LaHaie Decl. ¶5. The Autodesk License Agreement also provides that Autodesk, "grants [the opener of the software packet] a nonexclusive, nontransferable license to use the enclosed program (the 'Software') according to the terms and conditions herein". LaHaie Decl. ¶7, Exhibit A, paragraph 2. If the user declines to accept the license terms, a full refund is allowed upon the terms alleged by Vernor. FAC ¶11.

Upon initial setup and installation of the AutoCAD®, Release 14 software, a screen appears requesting the user to agree that he or she has read the Software License Agreement and stating that the user has a choice to either (a) accept the license terms and begin

---

[2] Because Plaintiff pleads the existence of a Software License Agreement, states its terms, does not question its authenticity, and asks for declaratory relief regarding its enforceability as to Vernor, the agreement may be properly offered and considered on a Motion to Dismiss. See In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 n4 (9th Cir. 1996); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir.1994) (overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)).



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

installation of the software, or (b) reject the license terms and cease installation and setup of the program. LaHaie Decl. ¶ 13.

Vernor admits that he acquired "used" software from the Licensee. Vernor does not dispute that the Licensee had a license agreement with Autodesk. Indeed, Vernor does not, and cannot, dispute that the Licensee acquired the AutoCAD®, Release 14 software that Vernor has "sold" or wishes to "sell" pursuant to the Settlement Agreement.

The Settlement Agreement provided that Autodesk would ship the AutoCAD®, Release 14 software licenses to the Licensee upon the Licensee's execution of the agreement and payment of funds. Id. at ¶8. The Licensee had notice and assented to the license terms several times. The Licensee contractually agreed via the Settlement Agreement not to transfer the subject licensed software to any other person without Autodesk's prior written consent. LaHaie Decl., ¶ 4, Ex. A. Pursuant to the Settlement Agreement, the Licensee agreed to this restriction even before the software was shipped to it. Id. Thus, the Licensee was bound by the non-transferability provision in the Autodesk License Agreement even if it had never opened the software. However, the Licensee again assented to the transfer restrictions when it opened the software box and the jewel case, when it installed the software, and yet again when it upgraded the software for a substantial discount and agreed to destroy prior versions.

## ARGUMENT

### I. STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS.

In lieu of an answer, a party may file a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a Rule 12(b)(6) motion, the factual allegations set forth in the complaint are taken as true, but conclusory allegations of law and unwarranted inferences are insufficient to defeat the motion. Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996). The factual allegations must be enough to raise a right of relief above the



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

speculative level. Knight v. Browne, No. C07-0738MJP, 2007 WL 2900279, at *2 (W.D. Wash. Oct. 2, 2007), citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

Extrinsic material that is identified as part of the complaint or alleged in the complaint may be considered on a motion to dismiss pursuant to Rule 12(b)(6) without converting the motion into one for summary judgment. In re Stac Electronics Securities Litigation, 89 F.3d at 1405 n.4; Branch, 14 F.3d at 453. Specifically, consideration of a document not submitted along with the complaint is appropriate in the context of a motion to dismiss if the complaint specifically refers to the document and the document's authenticity is not questioned. Id.; Knight, 2007 WL 2900279, at *2. Further, if the plaintiff fails to introduce the document as part of his pleading, the defendant may introduce it to support the defendant's motion attacking the pleading. Branch, 14 F.3d at 453.

Additional documents outside of the pleading may be presented to and accepted by the Court, in which case the motion shall be treated as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(b). The Ninth Circuit does not require strict adherence to any formal notice requirements for conversion of a motion to dismiss to a motion for summary judgment. The parties simply must be fairly apprised that the Court will look beyond the pleadings in deciding the motion, thus transforming the Rule 12(b)(6) motion to one based on Rule 56. Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004).

## II. VERNOR FAILS TO STATE A CLAIM FOR DECLARATORY RELIEF.

### A. Vernor Cannot As A Matter Of Law State A Claim For Declaratory Relief That The First Sale Doctrine Allows Him To Sell Autodesk Software Where His Allegations Show That The Licensed Software Products He Acquired Are Bound By Transfer Restrictions.

#### 1. The First Sale Doctrine Does Not Apply To Situations Where Software Is Licensed Rather Than Sold.

The First Sale Doctrine prohibits a copyright owner from interfering with future transfers of a copyrighted work after the copyright owner has transferred ownership of the



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

work. Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 192 F. Supp. 2d 321, 332 (D.N.J. 2002) (licensee of home videos not entitled to the protection of the First Sale Doctrine). The Copyright Act and supporting case law make clear that the First Sale Doctrine applies only to owners, not licensees, of software:

> Notwithstanding the provisions of Section 106(3) [establishing the copyright owner's exclusive right of distribution], the **owner** of a particular copy or phonorecord lawfully made under this title, or any person authorized by such **owner**, is entitled, without the authority of the copyright owner, to sell, or otherwise dispose of the possession of that copy or phonorecord. 17 U.S.C. § 109(a) [emphasis added].

In this case, Vernor admits acquiring Autodesk software that he wishes to sell from Autodesk's Licensee.

Vernor does not and cannot allege that the Licensee owned the software. Instead, the Licensee only acquired a license to use the software pursuant to certain agreed upon terms. Thus, the First Sale Doctrine does not apply. Adobe Sys. v. One Stop Micro, Inc., 84 F. Supp. 2d 1086, 1089 (N.D. Cal. 2000) ("a copyright owner does not forfeit his right of distribution by entering into a license agreement.").

Under both the facts alleged and the actual evidence, it is clear that the Licensee assented to the Autodesk License Agreement and thus agreed not to transfer the software. Beyond the binding and dispositive Settlement Agreement, the Licensee assented to the license transfer restrictions when it opened the software packages and installed the licensed software products.

Courts have repeatedly found that shrinkwrap and clickwrap licenses on software are enforceable and, correspondingly, that the First Sale Doctrine is inapplicable in license situations.[3] This is particularly true under factual allegations where licensees have

---

[3] See, e.g., Meridian Project Sys., Inc. v. Hardin Const. Co., LLC, 426 F. Supp.2d 1101, 1107 (E.D. Cal. 2006) (license is a simple two-party contract that does not conflict with the Copyright Act); i-Systems, Inc. v. Softwares, Inc., 2004 WL 742082, at *6-7 (Minn. 2004) (installation and use of software with licenses attached constitutes acceptance of its terms); Novell, Inc. v. Unicom Sales, Inc., 2004 WL 1839117 *10-13 (N.D. Cal. 2004) ("contracts contained in software boxes, which are sometimes referred to as 'shrink wrap



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

manifested the requisite assent to the terms of the licenses by opening the products' packaging or installing the products, and even more so in situations such as this case where the Licensee repeatedly agreed to the terms of the Autodesk License Agreement by: (a) executing the Settlement Agreement; (b) opening the packaging of the software in which the printed license was contained; (c) opening the sealed jewel case enclosing the software CD-ROM and to which a warning sticker was affixed; (d) agreeing to the click-through screens identifying the applicability of the license each time it installed the software associated with the software; and (e) upgrading the software at the reduced price.

The Seventh Circuit in ProCD, Inc. v. Zeidenberg, which is often cited by other courts that have repeatedly confirmed the enforceability of license transfer restrictions, specifically found that software licenses, like any other type of contract involving the exchange of goods, are enforceable and do not conflict with the Copyright Act. 86 F.3d 1447, 1450 (7th Cir. 1996). ProCD involved a publisher that sold copies of its software product in boxes with a label declaring that the software came with restrictions set forth in an enclosed license. The license terms were printed in the product manual and appeared on a user's screen every time the software was executed. One of those terms limited use of the software to non-commercial purposes. A consumer, in defiance of the license terms, began selling the information made available by the software. The district court refused to enjoin the sales and determined that the license terms were ineffectual because they were not printed on the outside of the product packaging. Id. at 1450. The circuit court reversed.

Citing the Restatement (2d) of Contracts, the ProCD court noted that "[n]otice on the outside, terms on the inside, and a right to return the software for a refund if the terms

---

licenses' are no less enforceable than any other contract"); Davidson & Assocs., Inc. v. Internet Gateway, Inc., 334 F. Supp.2d 1164, 1177-78 (E.D. Mo. 2004) (user assented to license agreement upon installation of software, precluding application of the First Sale Doctrine); Adobe Sys. Inc. v. Stargate Software Inc., 216 F. Supp.2d 1051, 1060 (N.D. Cal. 2002) (finding no reason that copyright holder should be barred from characterizing its transactions as licenses rather than sales); I. Lan Sys., Inc. v. Netscout Serv. Level Corp., 183 F. Supp.2d 328, 336, 338 (D. Mass. 2002) (clickwrap license agreements valid under the UCC).



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

are unacceptable (a right that the license expressly extends), may be a means of doing business valuable to buyers and sellers alike." Id. at 1451. With analogies to purchasers of insurance policies who have basic terms explained by agents prior to actual receipt of a binder full of policy terms, purchasers of airline tickets via travel agents who receive detailed contract terms printed on the tickets well after the time at which the tickets are purchased, and purchasers of consumer goods who read about applicable warranties for the first time on leaflets distributed only inside product boxes, the court reasoned: "Transactions in which the exchange of money precedes the communication of detailed terms are common." Id. To support its decision, the ProCD court turned to section 2-204(1) of the Uniform Commercial Code ("UCC"), which provides: "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

The Washington Supreme Court cited approvingly to ProCD in M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn.2d 568, 582-85, 998 P.2d 305, 311-14 (Wash. 2000) (license agreement enforceable even if no evidence that licensee read its terms because licensee, by accepting and using the software, implicitly assented to license terms). In that case, a customer executed a software purchase order issued by the copyright holder. Upon shipment, the software contained copies of the software developer's shrinkwrap license printed on the outside of each disk containing the software. Also, the software itself displayed a screen with references to the license when installed and executed. In analyzing the software license agreement as it would any contract for goods, the court held that Washington's version of the UCC "allows a contract to be formed in any manner sufficient to show agreement . . . even though the moment of its making is undetermined, it allows the formation of 'layered contracts' similar to those envisioned by *ProCD, Hill* and *Brower*." 140 Wn.2d at 582-84, 998 P.2d at 312-13 (citations omitted).

Even if the Settlement Agreement had not prohibited the Licensee's sales to Vernor,



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

the Licensee consented to the transfer restrictions when it opened and installed the software. In Stargate, the defendant obtained and resold educational versions of Adobe's software products whose packaging was marked with "Educational Version—Academic ID Required" stickers and included a label stating: "Notice to users: Use of the enclosed software is subject to the license agreement contained in the package." 216 F. Supp.2d at 1052. Despite the fact that the at-issue copies of the software were apparently unopened, the Stargate court found the applicable shrinkwrap license enforceable against the defendant. Id. at 1059. Notably, the court concluded that "no colorable reason exists in this case as to why Adobe and its distributors should be barred from characterizing the transaction that has been forged between them as a license." Id.

Here, the signed Settlement Agreement establishes that the Licensee held licenses, which by their terms were not transferable to Vernor. Vernor had no right to acquire the software, much less offer it for sale.

As a matter of law, licensed software is not subject to the First Sale Doctrine. On the face of the FAC, Vernor does not allege the Licensee was an owner of the software rather than a licensee. Vernor thus cannot invoke the First Sale Doctrine as to the software at issue in this case and lacks the standing to challenge the applicability and enforceability of the Autodesk License Agreement as to him. As the FAC fails to state a claim, and cannot on the facts be amended to state a claim, it should be dismissed with prejudice.

### 2. Vernor Is Bound By The License Agreement Between The Licensee And Autodesk.

As shown above, based on the facts as pled and the actual facts demonstrated herein, Autodesk's right to control the downstream distribution of its copyrighted work was not extinguished when it sent the licensed software packages its Licensee. Likewise, the law clearly rejects Vernor's claim that the Licensee's transfer of the at-issue licensed software to Vernor somehow freed him from the restrictions imposed by the Autodesk



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

License Agreement, including its transfer restrictions.

In Novell, Inc. v. Unicom, No. C-03-2785 MMC, 2004 WL 1839117 (N.D. Cal. 2004), the facts were almost identical to those plead here. In that case, Unicom acquired software from a third party, Joy, who under a license agreement with Novell, was not authorized to transfer the software. Id. at *1-2. Although initially no one had informed Unicom that the software was subject to license restrictions, after Unicom began advertising the software for sale, Novell contacted Unicom's president and informed him that Unicom could not legally distribute Novell products due to the license agreement. Id. at *3. Despite this warning, Unicom continued to distribute Novell software acquired from Joy. Id. The court held that because the software was licensed, and not sold, to Joy's company, the First Sale Doctrine did not apply to Unicom's subsequent sales of Novell software products acquired from Joy. Id. at *10-13.

The Novell court dismissed Unicom's argument that for some reason it should not be bound by the applicable license agreement: "Here, the issue is not whether [Unicom is] bound by the shrinkwrap agreement, but whether the original purchaser/licensee was bound by its terms." Id. at *11. Turning to the agreement, the court found: "Contrary to defendants' argument, contracts in software boxes, which are sometimes referred to as 'shrink wrap licenses,' are no less enforceable than any other type of contract." Id. Indeed, as long as license terms are neither unfair nor exploitive, courts will not interfere with the contracting intent of two commercial parties. Stargate, 216 F. Supp. at 1059-60.

Likewise, under the heading "No Good Faith Purchaser Exception to the First Sale Doctrine," the Novell court rejected Unicom's claim that because it was unaware that the software it acquired from Joy was licensed rather than sold, it could invoke the First Sale Doctrine in the resale of its products. 2004 WL 1839117 at *13. The court thus affirmed that in order for a defendant to invoke the First Sale Doctrine, it must show that title originally passed through a first sale (not license) by the copyright holder. Id. Here, like



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

Unicom, Vernor acquired Autodesk's software from a party bound by a license agreement (i.e., the Licensee) and, despite the fact that he was informed by Autodesk that his eBay auctions of Autodesk's software violated the Autodesk License Agreement, Vernor continued to sell the software. Thus Vernor, like Unicom, cannot as a matter of law claim that his sales of the licensed Autodesk software he acquired from the Licensee are covered by the First Sale Doctrine.

Similarly, in One Stop, 84 F.Supp.2d at 1086, the defendant acquired from an authorized reseller copies of the educational version of a software product published by Adobe. The defendant then sold those copies to non-educational customers in violation of the applicable shrinkwrap license terms.

On these facts, the One Stop court found that the Reseller Agreement between Adobe and its resellers authorized those resellers only to confer licenses of Adobe's products to third parties. Id. at 1090-92. The court also found that while the defendant was not a signatory to the reseller agreement, it was nonetheless subject to its restrictions. Id. at 1092. The court adopted the earlier holding in Microsoft Corp. v. Harmony Computers & Elecs., 846 F. Supp. 208, 211-13 (E.D.N.Y. 1994), that the defendant could not invoke the First Sale Doctrine because it could not trace the chain of title to the software back to an unrestricted purchase. Moreover, affirming the principle that a bona fide purchaser for value does not exist as to a license, the court in One Stop rejected the defendant's argument that because the defendant did not know that the licensees from who it obtained the software were bound by a license agreement, its sales of the software products were lawful. One Stop, 84 F. Supp.2d at 1093.

Thus, it is a clear principle of law that absent the agreement of the copyright holder, an individual who acquires an interest in a particular software package cannot acquire any greater rights in that package than were held by the transferor to that individual. Indeed, when a copyright owner licenses rather than sells a copy of its work, as is the case here, a



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

subsequent downstream acquirer of that same copy cannot obtain greater ownership than the licensee. Microsoft Corp. v. Software Wholesale Club, Inc., 129 F. Supp.2d 995, 1002 (S.D. Tex. 2000) ("unless title to the copy passes through a first sale by the copyright holder, subsequent sales do not confer good title").

Therefore, Vernor's offers to sell the licensed software, which were at all times subject to licenses bound by transfer restrictions, are prohibited as a matter of law.[4]

### B. Vernor Fails To State A Claim Because He Fails To Plead A Real And Reasonable Fear Of Being Sued.

The Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to allow parties to adjudicate their rights before damages accrue and before either party seeks legal remedies. See, Pratt v. Wilson, 770 F. Supp. 539, 545 (E.D. Cal. 1991). In order for this Court to decide a claim for declaratory relief, Vernor must plead an actual case or controversy. A mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction under the Declaratory Judgment Act.

In declaratory judgment actions involving trademarks and copyrights, a declaratory judgment plaintiff must show that (1) it has engaged in activity that will likely bring it into conflict with the defendant (*i.e.*, by making preparations to sell an allegedly infringing product ("standing"), and (2) it has a real and reasonable apprehension of liability ("ripeness"). Burlington Northern R. Co. v. Crow Tribal Council, 940 F.2d 1239, 1243 (9th Cir. 1991) (case dismissed due to plaintiff's failure to exhaust administrative remedies prior to initiation of declaratory relief action).

Vernor has not alleged ripeness as to litigation with Autodesk. Rather, Vernor alleges that he is afraid that Autodesk will interfere with his future eBay sales and that

---

[4] Assuming arguendo that the First Sale Doctrine is applicable in situations where software is licensed rather than sold, copyright owners are still entitled to restrict the resale of their works through contractual agreements. See House Report No. 94-1476 commenting on 17 U.S.C. § 109(a) (explaining that even though a third party may become an owner of a copyrighted work, the copyright holder may place conditions on its future disposition).



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

Autodesk's complaints may potentially lead to termination of his eBay account. FAC ¶¶32-34. However, the possibility of suspension of Vernor's right to sell items on eBay as pled would be a result of eBay policies, and not an action against him by Autodesk.

More importantly, Vernor fails to state a claim upon which relief may be granted as to other copies of Autodesk software he may acquire in the future because he does not allege how or from whom that software may be acquired. Vernor's broad request asks this Court to determine whether under an uncertain set of future facts Vernor's resale of authentic, used, possibly upgraded, possibly stolen, copies of AutoCAD® software is lawful and protected by 17 U.S.C. § 109, (and exempt from liability for copyright infringement or other rights) in general. Demand for Relief, ¶4(a)(b). This type of requested relief upon hypothetical facts does not fall within the scope of the Declaratory Judgment Act, which grants the Court jurisdiction only to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a). In sum, any request as to the legality of Vernor's resale of not-yet-acquired Autodesk software is not ripe for review.

For these reasons, as well as the facts alleged and demonstrated here, Vernor has failed to satisfy the requirements for stating a claim under the Declaratory Judgment Act.

## III. VERNOR FAILS TO STATE A CLAIM FOR UNLAWFUL AND DECEPTIVE PRACTICES.

### A. Because The Copyright Act Grants A Copyright Holder Exclusive Distribution Rights, And License Agreements Limiting Transfer Of Software Are Enforceable Contracts As A Matter Of Law, Vernor Fails To State A Claim For Unfair And Deceptive Practices.

Vernor's Second Claim for Relief alleges that the Autodesk License Agreement transfer restrictions are "unconscionable and unlawfully restrict rights guaranteed by the Copyright Act." FAC ¶35. As set forth above, these claims under the facts alleged and evidence submitted are contrary to established law.

Courts have overwhelmingly approved the right of a copyright holder to limit the distribution of its software through use of license agreements. Vernor's claim that a



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

copyright holder limiting the dissemination of its copyrighted works restrains trade ignores the most basic premise of the Copyright Act, *e.g.*, to ensure the copyright holder retains certain exclusive rights in order to foster creativity and innovation. See e.g., Goldstein v. California, 412 U.S. 546, 555, 93 S.Ct. 2303, 2309 (1973) ("to encourage people to devote themselves to intellectual and artistic creation, Congress may guarantee to authors and inventors a reward in the form of control over the sale or commercial use of copies of their works.") (superseded on other grounds by statute, 17 U.S.C. § 301).

Among the exclusive rights provided a copyright holder is the right "to distribute copies . . . by sale or other transfer of ownership, or by rental, lease, or lending . . ." 17 U.S.C. § 106(3). This right is limited only in certain cases, such as the First Sale Doctrine – and that doctrine requires a sale, which does not exist here. As established above, courts have repeatedly confirmed a software developer's ability to maintain control of the dissemination of its software products through use of licenses, and rejected claims that such licenses conflict with the First Sale Doctrine.

There is no legal basis for Vernor's claim that a license agreement prohibiting transfer amounts to an unlawful restraint on trade or competition. See generally Altera Corp. v. Clear Logic, Inc., 424 F. 3d 1079, 1090 (9th Cir. 2005) (refusing to extend defense of copyright misuse to allow independent claim for copyright misuse based on allegations of illegal tying through use of software license.); see also Video Pipeline, Inc., 192 F. Supp. 2d at 345-46 (rejecting claim of copyright misuse where no allegations that copyright holder attempted to control competition in an area outside the scope of its copyrighted works). Autodesk's license agreement limiting the distribution of its products is a right specifically afforded to copyright holders by Congress in 17 U.S.C. § 106(3).

Vernor's Second Claim for Relief ignores that copyright law gives copyright holders control over the dissemination of their works, which is in effect a monopoly for the term of the copyright. Courts have routinely affirmed that copyright law was designed to allow



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

copyright holders to monopolize the sale of their works if so desired. See Stewart v. Abend, 495 U.S. 207, 228-29, 110 S. Ct. 1750, 1764 (1990) (recognizing that the Copyright Act grants a copyright holder a limited monopoly during the term of the copyright); see also NCR Corp. v. First Fin. Computer Servs., Inc., 492 F. Supp. 2d 864, 867 (S.D. Ohio 2007) (suggesting that if a software publisher is found to hold a valid copyright, the copyright laws grant it a "state-sanctioned monopoly in that software," allowing the copyright holder to exclude all others from reproduction and distribution); Micro Star v. Formgen, Inc., 154 F.3d 1107, 1113 (9th Cir. 1998) (noting in a fair use case that every commercial use is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright).

Vernor's allegation that "Autodesk's copyright in its software does not give it the right to prohibit resale of its lawfully acquired products" is wrong as a matter of law given that the software at issue was licensed rather than sold. Autodesk's conduct is specifically sanctioned by the Copyright Act and every court's interpretation thereof. Accordingly, Vernor fails to state a claim that Autodesk has engaged in any prohibited anti-competitive or unfair behavior and Vernor's Second Claim for Relief should be dismissed.

## CONCLUSION

Plaintiff Timothy S. Vernor has failed with his First Amended Complaint to allege sufficient facts to state a claim upon which relief may be granted. Further, as a matter of law, the evidence demonstrates that there is no conceivable way for Vernor to amend his pleading to state a claim upon which relief may be granted. Vernor's supplier repeatedly manifested the requisite assent to the license terms governing the at-issue Autodesk software by executing a settlement agreement, by opening the product packaging containing the license agreement, by opening the software CD-ROM jewel case to which a warning sticker was attached, by clicking through the licensure assent screens as part of the software installation process, and by upgrading the software for a substantial discount. Under these



**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544 F: (510) 832-1486

facts, no authority legitimizes Vernor's knowing violation of the license terms or Vernor's argument that his supplier's transaction with Autodesk should be characterized as a sale. Accordingly, Autodesk respectfully requests that the Court dismiss the First Amended Complaint without leave to amend or, in the alterative, enter judgment in favor of Autodesk.

Dated this 15th day of January, 2008.

Respectfully submitted,

DONAHUE GALLAGHER WOODS LLP

By: /s/ Julie E. Hofer

Julie E. Hofer (*pro hac vice*)
Lawrence K. Rockwell (*pro hac vice*)
Eric W. Doney (*pro hac vice*)
300 Lakeside Drive, Suite 1900
Oakland, California 94612
Telephone: (510) 451-0544
Fax: (510) 832-1486
Email: julie@donahue.com
eric@donahue.com
larry@donahue.com

YARMUTH WILSDON CALFO PLLC

By: /s/ Angelo J. Calfo

Angelo J. Calfo, WSBA No. 27079
Jeremy E. Roller, WSBA No. 32021
Fourth & Madison
925 Fourth Avenue, Suite 2500
Seattle, Washington 98104
Telephone: (206) 516-3800
Fax: (206) 516-3888
Email: acalfo@yarmuth.com
jroller@yarmuth.com

Attorneys for Defendant Autodesk, Inc.