Hon. Richard A. Jones

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY S. VERNOR, an individual,<br><br>                Plaintiff,<br><br>    v.<br><br>AUTODESK, INC., a Delaware corporation,<br><br>                Defendant. | No. 2:07-cv-01189-RAJ<br><br>AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT<br><br>Note on Motion Calendar:<br>**February 29, 2008**<br><br>ORAL ARGUMENT REQUESTED |

Vernor's Opposition brings into clear relief the two-pronged argument he is actually making regarding the First Sale Doctrine. First, he argues that there is no license, despite the fact that this case involves an arm's length negotiated and signed agreement between two commercial parties represented by counsel and contains every term required for enforceability as a license. He then essentially argues that even if there is a license present for all other purposes, the First Sale Doctrine voids any restriction on transfer agreed to by the original contracting parties. Vernor ignores the great weight of authority that makes clear there are no "First Sale" constraints in this action.[1] The applicable case law confirms that licenses may generally limit a licensee's ability to transfer rights in software copies.

---

[1] Conspicuously, Vernor fails to mention let alone distinguish decisions by the Washington Supreme Court and various courts within the Ninth Circuit, all cited in the Motion, supporting the use of licenses by software publishers to regulate the making and distribution of copies of their products, as Autodesk has done here.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 1

**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

One of the reasons the authorities favor license restrictions on transfer is that fundamentally, and contrary to Vernor's assertions, software products are not comparable to books. Autodesk's AutoCAD®, Release 14 software at issue here (the "Software") cannot be used until it is loaded onto a computer by making a copy to the hard drive of a machine from the installation disc. The discs on which Software is delivered to licensees are <u>merely instrumentalities for the making of permitted copies pursuant to the license terms.</u>

Vernor's Opposition is fundamentally flawed as it presumes his <u>rightful</u> possession of authorized copies of the Software when what he actually has is a copying tool in which no rights remain. There is no dispute that Autodesk may by license restrict who may copy the Software and how many copies may be made when it is installed on computers, and Vernor concedes this right of Autodesk as the copyright owner constrains him. Opp. 8:12-18; 13:5-10, 17-20. There is also no dispute that Autodesk granted the right—a license—to its licensee Cardwell to make a copy of each installation disc now held by Vernor containing the Software (the "At-Issue CDs") in order to permit its use. LaHaie Decl. Ex. A.[2] Vernor further admits that Cardwell has already used the At-Issue CDs, and thus made all of the copies allowed by Autodesk's license, and that Cardwell thereafter agreed to relinquish <u>all</u> rights in the Software and the At-Issue CDs when it purchased licenses upgrading the Software on the At-Issue CDs. Yet, Vernor argues the First Sale Doctrine somehow affords him rights in the At-Issue CDs that Cardwell clearly did not possess and thus could not give him. This is not the law respecting software or any other property.

Vernor is selling the At-Issue CDs, knowing their use by his customers will necessarily result in unauthorized Software copies being made in excess of the number permitted by Cardwell's license. This subjects Vernor to liability, at a minimum, for contributory copyright infringement. Further, because Cardwell relinquished its rights in

---

[2] While the license allows for back-up and home-use, the purpose is for the end user's convenience and the objective is to have one—and only one—copy allowed for use by the one designated end user.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 2

**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California 94612-3570
T: (510) 451-0544  F: (510) 832-1486

1  the At-Issue CDs prior to Vernor gaining possession of the discs, the Software copies
2  therein have been unauthorized at all relevant times as they legally do not exist.  As such,
3  Vernor's distribution of the At-Issue CDs constitutes direct copyright infringement.

4  Finally, Vernor's reliance on the copyright misuse doctrine is misplaced.  Autodesk
5  seeks only to enforce compliance with its copyright, namely the exclusive rights to control
6  the distribution and copying of its copyrighted Software.  Autodesk's request to eBay was
7  for assistance to halt Vernor's illegal contributory and direct copyright infringement, and its
8  attempts to stop such illegal conduct are proper and a core purpose of the DMCA.

## I. A SOFTWARE PUBLISHER MAY USE LICENSE AGREEMENTS TO RESTRICT THE DISTRIBUTION OF COPIES OF ITS PRODUCTS.

### A. The Copyright Act Explicitly Recognizes That The First Sale Doctrine Does Not Apply To Copies Of A Copyrighted Work Acquired By Means Other Than Sale.

Vernor's attempt to seek shelter in the First Sale Doctrine and his citation to 17 U.S.C. section 109(a) ignores 17 U.S.C. section 109(d), which states:  "The privileges prescribed by subsections (a) [concerning the First Sale Doctrine]…do not, unless authorized by the copyright owner, extend to any person who has acquired possession of the copy…from the copyright owner, by rental, lease, loan, or otherwise, <u>without acquiring ownership of it.</u>"  (Emphasis added.)  As Cardwell (and thus Vernor, whose rights are derivative of Cardwell's) never acquired ownership, section 109(a) provides no harbor.

### B. The Case Law Confirms That Publishers May Control Distribution Of Their Products Via Licenses Notwithstanding The First Sale Doctrine.

The cases allowing publishers to use licenses to, *inter alia*, restrict their licensees' ability to distribute copies of their software products are legion.  Noticeably, Vernor does not address, let alone contest, most of the supporting cases identified in Autodesk's Motion recognizing that software shrinkwrap/clickwrap licenses (not to mention the settlement agreement Cardwell executed) are enforceable and not subject to challenge by application

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 3

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1   of the First Sale Doctrine.  *See, e.g.*, Mot. 10:11-13:9 (and cases cited therein).

2   Nonetheless, Vernor argues that "copyright law gives owners *no* right to control
3   downstream distribution of their products."  Opp. 6:12-14 (emphasis in original).  Vernor is
4   wrong, and the cases he and Autodesk cite explicitly hold otherwise.  For example, Vernor
5   relies upon *Softman Prods. Co. v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal. 2001),
6   to assert that a software license cannot prohibit transfers of copies distributed via license.
7   Opp. 15:12-20, 16:11-14.  The *Softman* court, however, expressly held that one factor
8   indicating that a software transaction should be considered a sale is if "subsequent transfer
9   [of copies] is neither prohibited nor conditioned on obtaining the licensor's prior approval."
10  *Id.*, at 1086.  Thus per *Softman*, not only may transfer restrictions apply, but their inclusion
11  in licenses is an actual factor establishing that the subject contract *is* a license.

12  Vernor seeks to escape via footnote (Opp. 13, n. 4) the decision in *Adobe Sys. Inc. v.
13  Stargate Software, Inc.*, 216 F. Supp. 2d 1051 (N.D. Cal. 2002).  *Stargate* found that the
14  publisher's distribution of copies of its software was done via valid license agreements and
15  thus the First Sale Doctrine was inapplicable.  In over five years, *no* court has negatively
16  cited to *Stargate*.  Consistent with *Softman*, the *Stargate* court determined that the
17  transaction was a license in part because the agreement *had* terms "limiting the [licensee's]
18  ability to re-distribute" software copies.  216 F. Supp. 2d at 1058; *see also Adobe Sys. Inc.
19  v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1091 (N.D. Cal. 2000) ("These numerous
20  restrictions imposed by [the publisher] indicate a license rather than a sale because they
21  undeniably interfere with the [licensee's] ability to further distribute the software").

22  Vernor's reliance on *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991
23  F.2d 426 (8th Cir. 1993) for a supposedly contrary result is nonsensical.  It concerned only
24  the scope of the licensee's use—not improper distribution or copying—of the subject
25  software.  *Id.*, at 430.  By contrast, Autodesk's claims against Vernor concern not his use of
26  the Software, but rather his unauthorized distribution and material contribution to others'

AUTODESK'S REPLY IN SUPPORT OF MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 4

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

unauthorized copying of the Software.[3]  The case provides no support for Vernor's distribution of an instrumentality to make illegal copies.  In sum, the software-related cases cited by the parties leave no doubt that a party may license its software products to another and use the license terms to restrict the licensee's ability to make or distribute copies.

### C. *Bobbs-Merrill Co. v. Straus* Has No Relevance To Autodesk's Right To Restrict The Distribution Of Copies Of Its Software By License.

Vernor's reliance on *Bobbs-Merrill Co. v. Straus,* 210 U.S. 339 (1908) is remarkable since the law of the case supports Autodesk.  The *Bobbs-Merrill* copyright holder published a book in which it printed a statement indicating that no dealer of copies of the book could sell the same for less than $1 per copy.  *Id.*, at 341.  There is no evidence that any such dealer ever entered into a written or oral agreement with the publisher containing such a term.  Instead, the publisher argued that its copyright-derived right to "vend" (i.e., sell) copies of its work vested it with the right to dictate the terms pursuant to which purchasers could resell any copies they bought.  *Id.,* at 349.  The Supreme Court disagreed, determining that once an authorized copy of the book is sold, copyright law does not govern what the purchaser may do with that copy.

What was not at issue there—but is here—is the publisher's right to control copying.  Nothing in *Bobbs-Merrill* suggests that Vernor, holding no right to copy the Software, can sell either a right to copy or the instrumentality to make an unauthorized copy.  Why Vernor believes this case has any bearing on the resolution of Autodesk's Motion is unclear.  *Bobbs-Merrill* obviously did not concern software and the copying of discs to install/distribute copies of software products.  Unlike the At-Issue CDs, each lawfully made copy of the *Bobbs-Merrill* book could actually be used for its intended purpose (i.e., read) by a purchaser without violating the publisher's exclusive rights to copy and distribute its

---

[3] *Nat'l Car Rental* is only applicable to the analysis of the liability of a licensee, such as Cardwell, not that of an unauthorized downstream acquirer of installation discs such as Vernor.  To that end, this case provides no authority for Cardwell's distribution, or other parties' making copies, of the Software on the At-Issue CDs.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 5

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

work. The At-Issue CDs, by contrast, are for copying. It is precisely this required copying, and the number of copies that may be made in connection with that copying, that Autodesk may and does regulate with its license. This copying by any Vernor customer creates more copies of the Software than Autodesk ever authorized and is a basis of Vernor's copyright infringement liability.

More fundamentally, the *Bobbs-Merrill* publisher agreed that it was selling, and not licensing, copies of its book. As noted by the Court: "There is no claim in this case of contract limitation, nor license agreement controlling the subsequent sales of the book." *Id.*, at 350. Thus the Court was "purely" dealing with subsequent sales after an initial admitted *sale*. Autodesk has made equally clear that it only licenses, and never sells, copies of its Software. As 17 U.S.C. § 109(d) of the Copyright Act dictates, the First Sale Doctrine of 17 U.S.C. § 109(a)—and thus *Bobbs-Merrill*—is inapplicable to copies of copyrighted works such as the Software that are licensed, not sold.

Finally, the "vending" of a copyrighted work (which Vernor alleges is tantamount to distribution) in and of itself does not divest the copyright owner of the right to "prevent possessors and even owners of the objects from making copies of them." *Platt & Munk Co., Inc. v. Republic Graphics, Inc.,* 315 F.2d 847, 851 (2d Cir. 1963). Vernor concedes this point. Opp. 8:16-18. Autodesk can and does prohibit the copying that Vernor purports he can set in motion, and thus Vernor's acts infringe Autodesk's copyright in the Software.

## II. THE AUTODESK LICENSE AGREEMENT IS ENFORCEABLE.

Vernor concedes that courts analyze the terms and circumstances of a transaction involving copies of a software product to determine whether it is a license or a sale. It is beyond dispute that the Autodesk License Agreement contains all elements of an enforceable license and is therefore a license as a matter of law.[4]

---

[4] As noted in the Motion, deference is accorded to the characterization by Autodesk and Cardwell of their transaction respecting the At-Issue CDs as a license given the commercial status of both entities. *See Stargate*, 216 F.Supp.2d at 1059. Such deference is particularly deserving given that both Autodesk and

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 6

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1       Indicia of a software license include:  (1) numerous restrictions on title with respect
2  to the end user (*Stargate*, 216 F.Supp.2d at 1060); (2) a clear recitation at the top of the
3  agreement that it is a license (*Id.*); (3) terms allowing the end user to return a package for a
4  refund of the license purchase price if the end user does not agree with the terms of the
5  license (*Id.*); (4) an expressed intent by the copyright owner to maintain proprietary
6  ownership over its software (*Id.*); (5) the purported transfer of only limited rights for a
7  limited purpose (*United States v. Wise*, 550 F.2d 1180, 1190 (9th Cir. 1977)); (6) a grant of
8  rights to use the software for even an unlimited period of time as long as use is confined to
9  those within an organization (*Novell, Inc. v. Unicom,* No. C-03-2785 MMC, 2004 WL
10  1839117 at *11 (N.D. Cal. Aug. 17, 2004)); (7) automatic termination of the license upon
11  licensee breach (*Id.*); (8) a requirement that the licensee destroy each copy upon license
12  breach (*Id.*); and (9) an express reservation of rights (*Id.*).
13       The license between Autodesk and Cardwell contains literally all of the above-
14  referenced terms or permutations thereof and is thus an enforceable license as a matter of
15  law.  *See* LaHaie Decl., Ex. A to Ex. A.

**III.   AUTODESK'S LICENSE PROPERLY CONTROLS WHO MAY MAKE COPIES OF ITS SOFTWARE AND HOW MANY COPIES MAY BE MADE.**

   **A.   As To Each At-Issue CD, Autodesk's License Gave Copying Rights Only To Cardwell.**

19       Both parties agree that "[a] copyright owner may…grant a limited license to make a
20  certain number of copies [of its copyrighted software product], and, in that case, exceeding
21  the number of authorized copies could give rise to a claim for copyright infringement."
22  Opp. 8:13-16; *see also* Mot. 10:11-13:10 (and cases cited therein).  Vernor notes a publisher
23  can distribute its software via a license allowing no more than five copies to be made, and if
24  a sixth copy is made, the owner's copyright is implicated.  Opp. 9:6-8.

---

26  Cardwell, as two sophisticated commercial parties, were represented by counsel in connection with their execution of the detailed settlement agreement and the original license incorporated therein.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 7

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

Vernor's concessions bar his claims. Autodesk granted licensee Cardwell—and no one else—the license right to make the one copy of the Software from each At-Issue CD. Vernor admits each At-Issue CD has been "used"; the permissible copy has been made. Accordingly, anytime a Vernor customer utilizes an At-Issue CD to make and install a new copy of the Software on a computer: (i) a copy in excess of the number permitted by Cardwell's license is made; and (ii) Autodesk's Software copyright is infringed insofar as Autodesk's exclusive right to authorize copying is violated.

### B. Vernor's Distribution Of The Used At-Issue CDs, With Knowledge That His Customers Will Necessarily Make Additional Unauthorized Copies Of The Software, Is Contributory Copyright Infringement.

Vernor asserts that "because [his] act of selling an authentic copy of AutoCAD[®] software [contained on an At-Issue CD] is…not unlawful, he needs no license or permission to do it." Vernor's assertion is without merit. Vernor's sale of the used At-Issue CDs is contributory copyright infringement because he: (1) "knowingly contributed to the infringing conduct of another" (i.e., Vernor's customers' copying); and (2) "materially contributed to the infringing activity" (i.e., by selling the discs on eBay). *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).[5]

As stated above, when Vernor's customer uses an At-Issue CD to install the Software, the customer: (a) makes a Software copy in excess of the number permitted by Autodesk via Cardwell's license; and (b) thereby infringes Autodesk's copyright. Vernor's provision of the At-Issue CDs to his customers is precisely what allows this infringement to occur and is thus a material contribution to the infringing activity. *Id.*

The element of knowledge is established as Vernor "knew or had reason to know" of his customers' infringement to which he contributed given his knowledge of the license

---

[5] Vernor's "sales" make him a contributory infringer under the law set out in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Id.*, at 914. A defendant's distribution of a product with the intent to promote its use by others to infringe copyright constitutes actionable contributory infringement. *Id.*, at 915.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 8

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1  terms and that the At-Issue CDs are used. *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th
2  Cir. 2004). Vernor's demonstrable sole intent in selling the At-Issue CDs is to provide his
3  customers with the tool necessary to make the copies that infringe Autodesk's copyright.
4  Indeed, Vernor alleges throughout his complaint that his intent has always been to sell the
5  *Software* on the At-Issue CDs. Second Am. Complaint ¶¶ 17, 24, 25, 26, 29, 30, 33, 34.

6  Vernor's customers cannot infringe Autodesk's copyright without the At-Issue CDs,
7  and Vernor's provision of the instrumentality to accomplish the infringement is a material
8  contribution. *Id.* Vernor's liability is clear and his right to "sell" the Software non-existent.

### IV. VERNOR IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT BECAUSE THE AT-ISSUE CDS DO NOT CONTAIN AUTHORIZED COPIES OF AUTODESK'S COPYRIGHTED SOFTWARE.

#### A. Vernor Ignores That Cardwell Purchased Upgrade Licenses For The Software On The At-Issue CDs, Agreed To Destroy The At-Issue CDs, And Relinquished All Rights In The Software And The At-Issue CDs.

13  As discussed in Autodesk's Motion, prior to the date on which Vernor possessed the
14  At-Issue CDs, Vernor's supplier (Cardwell): (i) purchased an upgrade license for each At-
15  Issue CD; and (ii) received a substantial discount from Autodesk on the price thereof in
16  exchange for its agreement to both destroy the At-Issue CDs and relinquish to Autodesk
17  any right it had to possess and use these media. *See* Mot. 6:22-26, n.1; LaHaie Decl. ¶ 4.

18  Cardwell therefore had no right to distribute the At-Issue CDs to anyone, including
19  Vernor, whether the original Cardwell/Autodesk transaction is construed as a license <u>or</u> a
20  sale. If it was a license as Autodesk contends—and as the overwhelming weight of
21  precedent holds—then all of Cardwell's rights in the At-Issue CDs terminated in the
22  upgrade process. If the original transaction is ever deemed a sale, as Vernor alleges without
23  support, then as part of the upgrade process Cardwell transferred all rights it had in the At-
24  Issue CDs back to Autodesk as consideration for its ability to purchase copies of the
25  upgraded Software at a substantial discount. Either way, all rights in the At-Issue CDs,
26  including the distribution and copying rights, were solely Autodesk's before Vernor gained

AUTODESK'S REPLY IN SUPPORT OF MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 9

**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1 unauthorized possession of these media.  Vernor's distribution of the At-Issue CDs without
2 Autodesk's permission thus subjects him to liability for direct copyright infringement.

### B. Vernor Cannot Satisfy His Burden To Trace The Chain Of Title In The At-Issue CDs To An Entity With The Right To Distribute Those Media To Him Or Anyone Else.

Vernor ignores his obligation to trace the chain of title in the At-Issue CDs to demonstrate his "right" to distribute the media to third parties.  Instead, he asserts he may simply skip this step because it is "unworkable."  *See* Opp. 22:11-25.  Just as Vernor's efforts to illegally sell the Software are constrained by copyright law, here Vernor must either meet the burden of showing title or suffer the consequences.[6]  *See, e.g.*, *Microsoft v. Harmony Computers & Elecs., Inc.*, 846 F.Supp. 208, 212-14 (E.D.N.Y. 1994); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F.Supp.2d 995, 1002 (S.D. Tex. 2000).

Vernor sidesteps his duty to show title in order to be able to "sell" the At-Issue CDs by claiming the transfer restriction cannot be enforced against him because he did not agree to Caldwell's license.  Opp. 22:2-3.  Vernor would have himself acquiring a fee simple from a lessee in the title of a leased car simply because the lessee wants to sell the car and Vernor wants title.  The law obviously does not tolerate such an absurd result.  *See, e.g.*, *Orillia Lumber Co. v. Chicago, M. & P. S. Ry. Co.*, 84 Wash. 362, 365, 146 P. 850, 851 (1915) (an assignee can claim no greater title than existed in the assignor, just as a bona fide purchaser under a defective title cannot claim ownership of the property against the true owner).  The law is clear that Vernor cannot buy what his supplier, Cardwell, did not have to sell.

*Novell,* 2004 WL 1839117, disposes of Vernor's effort to hide behind his manufactured ignorance.  It is irrelevant whether Vernor believes he must comply with Cardwell's license; all that matters is whether Cardwell is so bound.  *Id.*, at *11.  The

---

[6] It is easy for anyone, including Vernor, to trace the chain of title associated with a particular copy of the Software.  Autodesk serializes each copy of its Software with a unique number maintained in a comprehensive database.  Lahaie Decl., ¶ 4.  Autodesk has a toll-free telephone number that anyone can call to inquire about the status of any such serial number.  Thus all Vernor had to do to trace the chain of title before "purchasing" the At-Issue CDs was merely call that telephone number.  His failure to do so does not satisfy his burden.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 10

**Donahue Gallagher Woods LLP**
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1  settlement agreement executed by Cardwell and Autodesk, the original license incorporated
2  therein, and the upgrade agreement in which Cardwell relinquished all rights in the At-Issue
3  CDs and the Software (whether by license or sale) leave Vernor devoid of rights.  His
4  distribution of the At-Issue CDs thus subjects him to liability for direct copyright
5  infringement.

### V. THE NARROW COPYRIGHT MISUSE DEFENSE IS INAPPLICABLE TO AUTODESK'S MERE EXERCISE OF ITS EXCLUSIVE RIGHTS IN ITS COPYRIGHT.

Vernor's allegations of copyright misuse against Autodesk are unfounded.  This narrow defense is applicable only when a copyright owner uses its copyright to secure an exclusive right or limited monopoly not granted by the Copyright Act.  *Practice Mgmt. Info. Corp. v. AMA,* 121 F.3d 516, 520 (9th Cir. 1997).  Such facts do not exist in this case.

An essential element of the misuse defense is that the owner somehow misused or abused its copyright—beyond the ordinary and proper protections it affords—to prevent others from competing in the market.  *Microsoft Corp. v. Computer Support Servs. Of Carolina, Inc.*, 123 F. Supp. 2d 945, 955 (W.D.N.C. 2000).  The defense applies only if the asserter can prove that the copyright holder's actions "significantly undermined the copyright policy of promoting invention and creative expression." *Schloss v. Sweeney*, 515 F. Supp. 2d 1068, 1080 (N.D. Cal. 2007) (citing *Practice Mgmt*, 121 F.3d at 521).

Courts have summarily rejected the defense where the copyright owner did not prohibit its licensees from either using or independently developing a competing product. *See, e.g.*, *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir.1995); *Serv. & Training, Inc. v. Data General Corp.*, 963 F.2d 680, 690 (4th Cir.1992); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir.1986); *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 368-69 (E.D. Va. 1994)

Autodesk has not engaged in any action even remotely rising to a level where

AUTODESK'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 11

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486

1  copyright misuse could be considered.  Autodesk enforced its exclusive reproduction and
2  distribution rights in its Software copyright.  Not a single case cited by Vernor extends the
3  copyright misuse doctrine to a copyright owner controlling copying or distribution of copies
4  of the copyrighted product, which is precisely what 17 U.S.C. section 109(d) and well-
5  established case law allows software copyright owners to do.

6  Autodesk asked eBay to address the direct and contributory copyright infringement
7  of Vernor as conducted through eBay's marketplace.  Had eBay not done so, it would have
8  opened itself to a potential claim by Autodesk for contributory infringement via the aid it
9  was providing to Vernor's unauthorized acts.  Accordingly, Autodesk properly used the
10 Digital Millennium Copyright Act to offer eBay, as an Internet service provider, the
11 opportunity to claim safe harbor from such a claim.  If Vernor believes he is injured by
12 eBay's actions, his potential remedy is against eBay and <u>not</u> Autodesk.

## **CONCLUSION**

14 For the reasons set forth above and in the Motion, Autodesk respectfully requests
15 that the Court grant Autodesk's Motion.

16 Respectfully submitted this 29th day of February, 2008.

17 DONAHUE GALLAGHER WOODS LLP          YARMUTH WILSDON CALFO PLLC

19 By: /s/ Lawrence K. Rockwell                    By: /s/ Angelo J. Calfo
   Lawrence K. Rockwell (*pro hac vice*)           Angelo J. Calfo, WSBA No. 27079
20 Eric W. Doney (*pro hac vice*)                  Jeremy E. Roller, WSBA No. 32021
   Julie E. Hofer (*pro hac vice*)                 Fourth & Madison
21 300 Lakeside Drive, Suite 1900                  925 Fourth Avenue, Suite 2500
   Oakland, California  94612                     Seattle, Washington  98104
22 Telephone:  (510) 451-0544                      Telephone:  (206) 516-3800
   Fax:  (510) 832-1486                            Fax:  (206) 516-3888
23 Email:    larry@donahue.com                     Email:    acalfo@yarmuth.com
              eric@donahue.com                               jroller@yarmuth.com
24            julie@donahue.com                    Attorneys for Defendant Autodesk, Inc.
   Attorneys for Defendant Autodesk, Inc.

AUTODESK'S REPLY IN SUPPORT OF MOTION TO
DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT
NO. 2:07-cv-01189-RAJ – Page 12
456.02 b291504

Donahue Gallagher Woods LLP
300 Lakeside Drive, Suite 1900
Oakland, California  94612-3570
T: (510) 451-0544  F: (510) 832-1486